**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| KENNETH LINCK, CARYLL LINCK, and WHISKEY RUN FARMS, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | 2:11-cv-245 |
| DEBORAH J. TAYLER, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF MATTHEW C. TAYLER, DECEASED, | ) ) ) ) ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Defendant has filed a Motion to Dismiss claiming that this diversity case arising out of a car accident does not meet the $75,000 amount-in-controversy requirement for federal diversity jurisdiction. On January 27, 2012, I held a hearing at which both sides presented oral argument on the Motion and at which Plaintiff Kenneth Linck was called to testify. For the reasons explained in detail below, I have concluded that it is not legally certain that Kenneth Linck's damages will be less than $75,000; Defendant's Motion to Dismiss will therefore be denied.

Here are the facts as set forth in the complaint and as testified to at the January 27th hearing on the pending motion. On February 1, 2011, Kenneth Linck was driving a semi-tractor trailer in Roselawn, Indiana, while Caryll Linck (Kenneth's wife) rode along as a passenger. The semi-truck was owned by Whiskey Run Farms, a limited liability company wholly owned and operated by the Lincks. As Kenneth was driving the truck, Matthew Tayler turned his Ford Escort from the shoulder of the road into the truck's path. The accident that resulted severely injured both Tayler and a passenger in his car. Kenneth and other passersby immediately came

to their assistance. An ambulance took both Tayler and the passenger to a nearby hospital, but both eventually died from their injuries.

This is the second accident that Kenneth had been involved in where there were two fatalities. In the prior accident, which occurred in the early 1980's, two elderly ladies ran a stop sign and the truck Kenneth was driving hit their car, killing both women immediately. That accident was deemed not to be his fault, but Kenneth made clear that the memories of it have haunted him ever since.

Plaintiffs' Complaint in this matter alleges that Tayler was driving in a negligent fashion, which directly and proximately caused physical and emotional injuries to the Lincks as well as property damage to the truck owned by Whiskey Run Farms, which in turn caused a loss of income due to the loss of its commercial vehicle. The Complaint bases federal subject-matter jurisdiction on diversity: this Court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states[.]" 28 U.S.C. § 1332(a). Plaintiffs are all citizens of Wisconsin, while Defendant is a citizen of Indiana, and thus neither party disputes that complete diversity exists. Defendant's challenge to federal jurisdiction is whether the amount in controversy exceeds $75,000.

In analyzing the amount-in-controversy requirement, "[t]he separate claims of multiple plaintiffs against a single defendant cannot be aggregated." *McMillian v. Sheraton Chicago Hotel & Towers*, 567 F.3d 839, 844 (7th Cir. 2009). The court must therefore look at the individual claims of each plaintiff in determining whether they exceed $75,000. *Id.* Moreover, "[w]here, as here, the defendant challenges the plaintiff's allegation of the amount in

controversy, the plaintiff must support its assertion with 'competent proof'" and must prove the "jurisdictional facts by a preponderance of the evidence." *Id.* In satisfying this burden, a "party must do more than point to the theoretical availability of certain categories of damages." *Id.* (internal quotations omitted). The case may be dismissed, however, "only if it is legally certain that the recovery (from plaintiff's perspective) or cost of complying with the judgment (from defendant's) will be less than the jurisdictional floor . . . ." *LM Insurance Corp. v. Spaulding Enterprises Inc.*, 533 F.3d 542, 547 (7th Cir. 2008). The Seventh Circuit has emphasized that this "legal-certainty test sets the bar high for excluding federal subject-matter jurisdiction." *Carroll v. Stryker Corp.*, 658 F.3d 675, 681 (7th Cir. 2011).[1]

---

[1]There is an interesting side issue in this case that requires a lengthy footnote. At the January 27th hearing, it also emerged that the Defendant in this case – the Estate of Matthew Tayler – may have brought, or may be planning to bring, a wrongful death action against Kenneth Linck in Indiana state court. This piqued my interest because I wondered if such an action would be a compulsory counterclaim in this case and thus contribute to the potential amount of damages at stake. Questions about whether and how potential counterclaims are to be counted in satisfying the jurisdictional amount are a notorious quagmire of civil procedure. *See*, *e.g.*, Charles Alan Wright et al., 14AA *Federal Practice and Procedure* § 3706 (4th ed.) ("The extent to which a counterclaim, cross-claim, or third-party claim can be considered in determining the amount in controversy never has been resolved definitively by the federal courts.").

At the hearing, both sides of this case were unsure about the status of the wrongful death action, so I asked them to research the issue and file a joint status report. The joint status report [DE 22] still leaves things a little murky. Matthew Tayler's parents did file a wrongful death suit in Newton Superior Court (Indiana) against Kenneth Linck and Whisky Run Farms a week after the accident. A month later, however, they filed a notice of dismissal without prejudice, which the court granted. The joint status report filed in this case states that the parents "continue pursing claims on their own behalf . . . notwithstanding the apparent dismissal of their complaint, without prejudice, by the Newton Superior Court." [DE 22 at 5.] Nevertheless, the key distinction between the wrongful death action and this case appears to be that, under Indiana law, the parents of a deceased can bring a claim without opening an estate (as they apparently did), whereas here the Plaintiffs can only bring a claim against the estate (and not the parents). Thus, while two of the plaintiffs in this case (Kenneth Linck and Whisky Run Farms) match up as defendants (or potential defendants) in the state wrongful death case, the plaintiffs in that case (Tayler's parents) do not match up as the defendant in this case (Tayler's estate). Therefore, it appears that the defendant in this case does not have any potential wrongful death counterclaim, and consequently I can only evaluate the jurisdictional amount solely on Plaintiffs' direct claims.

I'll start with the damages claimed by Whiskey Run Farms, LLC. Plaintiffs claim that the damage to the semi-truck was $13,188.91. On top of that, since the semi-truck has apparently been inoperable since the accident, they claim that Whiskey Run Farms suffered $101,733.33 in lost revenues during the 24 weeks between the date of the accident and the filing of the Complaint. Plaintiffs realize, however, that for purposes of calculating Whiskey Run Farms' potential damages (and thus the amount-in-controversy), the relevant number is its lost *profits*, not its lost revenues. *See e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 647 (7th Cir. 2011) ("[G]ross revenue is generally not an appropriate measure of damages because revenue is calculated without regard to the costs the plaintiff incurred in the course of making that revenue."); *Puckett Machinery Co., Inc. v. United Rentals, Inc.*, 342 F. Supp. 2d 610, 616 (S.D. Miss. 2004) (remanding case for lack of diversity jurisdiction based on failure to meet the amount-in-controversy requirement because the only evidence of damages was based on revenues and the court would not "assume . . . a profit margin").

Plaintiffs allege that the gross revenues of $101,773.33 would have resulted in $71,214.33 in profits, meaning that the LLC has a 70% profit margin. But this number is fanciful and cannot possibly be squared with the tax returns attached to the Lincks' affidavits. They show that in 2007, 2008, and 2009 Whisky Run Farms had a net loss – i.e., it apparently had no profits whatsoever. Since the only meaningful asset of the company appears to be the truck, its hard to imagine that in 2011 profits would have suddenly started to roll in, and even harder to believe that those profits would be at a rate of 70% of gross revenues. Given this documentary evidence, Plaintiffs have failed to support "with competent proof" that Whisky Run Farms' claim for damages is in excess of $75,000.

4

Analyzing the Lincks' claims for damages is a bit more complicated. Tort cases like these, where the majority of a plaintiff's damages are based on pain and suffering, present a particularly difficult problem for assessing the amount in controversy. As one of the leading civil procedure treatises has explained: "The application of the legal certainty test to a tort claim lodged in a federal court on the basis of diversity of citizenship in which the plaintiff alleges a small amount of actual damages, such as medical expenses, and a large amount of unliquidated damages, usually involving pain and suffering and a loss of future earnings, presents particularly difficult measurement problems." 14AA Charles Alan Wright et al., *Federal Practice and Procedure* § 3707 (4th ed.).

That is exactly the case here. Both Kenneth and Caryll have alleged a small amount of actual damages. Kenneth has around $5,000 in medical bills; Caryll's medical bills currently amount to about $2,500. Both allege they lost $71,214.33 in profits from Whisky Run Farms that would have passed through to them, but as shown above this estimate of profits is not supported by the evidence.

To account for the remaining jurisdictional shortfall of around $70,000, the Lincks allege damages from "loss of consortium" and pain and suffering, based on each of their struggles dealing with the memory of the incident. So, given the potential for these unliquidated damages, the question is whether it is "legally certain" that either of the Lincks' ultimate recovery "will be less than the jurisdictional floor." *LM Insurance*, 533 F.3d at 547. This is where matters get difficult.

Two recent Seventh Circuit opinions provide potentially different answers to this question. First, the Seventh Circuit's holding in *McMillian* supports Defendant's contention that

5

each of the Lincks' potential recovery is legally certain to be less than $75,000. The plaintiffs in that case suffered injuries when an escalator malfunctioned. Each individual plaintiff's actual medical bills amounted to less than $10,000, and the court found that "that their claims for future medical expenses and pain and suffering" were insufficient "to account for the jurisdictional shortfall." *McMillian*, 567 F.3d at 845. As the court explained:

> None of the plaintiffs points to any "competent proof" that he or she could prove damages from these categories to recover a total amount of damages that would reach the jurisdictional threshold. They do not suggest that there is any documentary or testimonial evidence that would show the necessity for future medical treatment of their injuries. Nor do they submit factual examples of their post-accident experience or point us to cases in which the plaintiffs had suffered similar injuries, and the jury awarded pain and suffering damages in amounts that would satisfy the jurisdictional requirements here.

*Id.*

Cutting in the opposite direction is the Seventh Circuit's decision in *Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813 (7th Cir. 2006), which helps to support the Lincks' contention that it is not legally certain that either of their recoveries will be less than $75,000. In that case the court found that the jurisdictional amount was satisfied in a slip-and-fall case where the plaintiff's medical expenses and lost earnings amounted to $45,000, so that with only "[a] modest allowance for pain, suffering, and future losses (either income foregone or medical expenses incurred) brings the total over the threshold." *Id.* at 815.

It's difficult to completely reconcile the holdings in *Rising-Moore* and *McMillian* – other than the relative difference between the amount of actual physical damages suffered ($45,000 vs. less than $10,000). That distinction cuts against the Lincks, as it makes their case look closer to *McMillian* than to *Rising-Moore*. Thus, while the plaintiff in *Rising-Moore* only needed another $30,000 – "a modest allowance for pain, suffering, and future losses" – to hit the minimum

6

amount, each of the Lincks would need, like plaintiffs in *McMillian*, more than $70,000 in additional damages to hit the jurisdictional floor.

Moreover, like the plaintiffs in *McMillian*, the Lincks "do not suggest that there is any documentary or testimonial evidence that would show the necessity for future medical treatment of their injuries." *McMillian*, 567 F.3d at 845. It is true that Kenneth stated that "he would have undertaken additional professional medical services but lacked the money to pay for it." [DE 10 at 8.] But this assertion is not supported by affidavits from medical professionals indicating the extent of his emotional injuries and the necessity of future services. *See McMillian*, 567 F.3d at 845.

Nevertheless, there are a number of important distinctions between this case and *McMillian*. Most importantly, the plaintiffs' claims in *McMillian* for tens-of-thousands of dollars in emotional damages was simply incredible under the circumstances. The plaintiffs all suffered their injuries when an escalator "jerked" and caused them to stumble. *Id.* at 840-41. No doubt this experience was somewhat distressing for the plaintiffs, but the "trauma" experienced in that case is not even in the same league – really not even in the same sport – as being directly involved in a car accident that kills two people.

Unlike the *McMillian* plaintiffs, Kenneth has alleged a plausible claim that he has suffered and continues to suffer post-traumatic stress disorder (PTSD) as a result of the incident. The evidence of his alleged PTSD was on full display in the searing and emotionally charged testimony he offered at the January 27th hearing. Breaking down several times throughout his testimony, Kenneth wearily and haltingly recounted the details of the incident in an emotional state that was equal parts disbelief, horror, and total despair. Moreover, his claim for PTSD is all

7

the more credible because this is the *second* time he had been involved in a fatal trucking accident. As noted, he testified that in the 1980s he had been involved in an accident that killed two elderly women. The more recent accident thus brought all those memories to the forefront of his mind and further exacerbated the overall trauma of an already harrowing experience. He testified to feeling as if he were an "instrument of death," and he hasn't been able to drive a semi-truck since the accident. He stated that he has nearly lost his faith in God and has had suicidal thoughts that are kept in check only by his belief that, as a Roman Catholic, suicide may prevent him from entering heaven. The incident clearly had a profound and devastating effect on Kenneth, and I have no doubt that a jury who heard the same testimony I heard could reasonably find that he has suffered tens of thousands of dollars in emotional damages.

Therefore, unlike the *McMillian* plaintiffs, whose trauma could never be properly described as PTSD, Kenneth's serious emotional and mental distress since the accident cannot be ignored. The fact that he can no longer drive a semi-truck – a job that he had done for nearly 40 years – adds to his potential damages. What's more, the distress that he suffers from – and thus in turn his potential for damages – is further amplified by his status as somewhat of an "eggshell" plaintiff by virtue of the prior accident that killed two elderly women. *See*, *e.g.*, *Cobige v. City of Chicago, Ill.*, 651 F.3d 780, 782 (7th Cir. 2011) ("A tortfeasor takes his victim as he finds him, and if a special vulnerability . . . leads to an unusually large loss, the wrongdoer is fully liable."); *Schmude v. Tricam Industries, Inc.*, 556 F.3d 624, 628 (7th Cir. 2009) ("If a tortfeasor inflicts a graver loss on his victim than one would have expected because the victim had some pre-existing vulnerability, that is the tortfeasor's bad luck; you take your victim as you find him. That is the famous 'eggshell skull' rule of tort law . . . ."); 2 Dan B. Dobbs, *The Law of*

*Torts*, § 313, at 852 (2001) ("If the defendant's conduct would subject him to liability for severe distress to a normal person, he is also liable for damages to an especially sensitive person, even if those damages are much greater because of the special sensitivity. This rule is merely the familiar thin skull or eggshell skull rule as applied to emotional harm."). Having been involved in a prior fatal accident made Kenneth especially susceptible to the emotional trauma that he now endures.

Kenneth's potential for damages in excess of the jurisdictional amount is further confirmed by reference to similar cases in which the jury awarded pain and suffering damages for PTSD. That is, unlike the plaintiffs in *McMillian*, the Lincks have in fact submitted "cases in which the plaintiffs had suffered similar injuries, and the jury awarded pain and suffering damages in amounts that would satisfy the jurisdictional requirements here." *McMillian*, 567 F.3d at 845.

It is true that the specific circumstances of personal injury cases are all so varied that it is hard to feel completely comfortable extrapolating from them. *See Harshey v. Advanced Bionics Corp.*, 2009 WL 3617756, at *2 (S.D. Ind. Oct. 29, 2009) (rejecting use of verdict from other personal injury cases to establish jurisdictional amount because it was "clear that the comparisons are not to other claims similar to these plaintiffs' claims but to a wide array of catastrophic personal injury cases"). But whatever the difficulties in comparing personal injury cases, the Seventh Circuit made clear in *McMillian* that these comparisons can be raised by a party seeking to prove the amount-in-controversy..

Here, the Lincks have pointed to various cases that involved relatively minor physical injuries in combination with PTSD where the amount of the verdict or settlement exceeded

9

$75,000. [*See* DE 11 at 9-10.] Defendant argues that these examples are inapplicable because they come from states other than Indiana, but I fail to see how that distinction is particularly material. Regardless, my research on the issue has uncovered some roughly similar Indiana cases that exceeded the jurisdictional amount. *See Silpayamanant v. GMAC Insur.*, 2005 WL 3993482 (Ind. 2005) (jury awarded $87,000 in damages to car accident victim who witnessed a passenger in another car die and who had $7,007 medical bills, $3,498 in lost wages, and claimed blurred vision, PTSD, aggravation of pre-existing shoulder problems, and insomnia); *Kukric v. Mittler*, 2009 WL 6580999 (Ind. 2009) (plaintiff, who was a passenger in a car that slammed into a utility pole, settled her case for $80,000; damages were based on medical expenses, PTSD from witnessing the driver die, loss of enjoyment of life, and impaired ability to earn future wages); *Grabowski v. V & S Transport, Inc.*, 1998 WL 891521 (Ind. 1998) (plaintiff, who claimed $52,348 in medical expenses and $125,000 in lost wages, was awarded $730,000 in damages after he suffered serious physical injuries and PTSD when his vehicle was struck by a dump truck); *Trimble v. York*, 1988 WL 373537 (Ind. 1988) (plaintiff, who claimed $20,000 in medical expenses and $10,000 in lost wages, settled his case for $100,000 having suffered a fractured nose, lower back strain, facial lacerations, a knee bruise and PTSD when his disabled vehicle was struck by a vehicle driven by the defendant).

Also added to Kenneth's potential total damages are his damages for loss of consortium with his wife Caryll. Under Indiana law, "an action for consortium rests in large part on the impairment or destruction of the sexual life of the couple." *Forte v. Connerwood Healthcare, Inc.*, 745 N.E.2d 796, 801, n.8 (Ind. 2001). Kenneth testified that the experience from the

accident has irrevocably altered the intimate relationship with his wife, and loss of consortium damages may therefore be available.

Thus, given all of Kenneth's potential damages and the significant differences between this case and *McMillian*, I find that he has provided "competent proof" that his total damages could exceed $75,000 and has thus proved the "jurisdictional facts by a preponderance of the evidence." *McMillian*, 567 F.3d at 845. Stated differently, the evidence proffered by Kenneth makes it impossible to conclude that "it is *legally certain* that [his] recovery ... will be less than the jurisdictional floor." *LM Insurance*, 533 F.3d at 547 (emphasis added).

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction [DE 7].

**SO ORDERED.**

Entered: February 10, 2012.    s/ Philip P. Simon
                               PHILIP P. SIMON, CHIEF JUDGE
                               UNITED STATES DISTRICT COURT